IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
----------------------------------------------------  :
DELOIS RICKS,                                         :  CASE NO.  1:06CV2426
                                                      :
                                  Plaintiff           :  MEMORANDUM OF OPINION AND
                                                      :  ORDER GRANTING DEFENDANT'S
                   -vs-                                :  MOTION FOR SUMMARY JUDGMENT
                                                      :
                                                      :
JOHN E. POTTER, POSTMASTER                            :
GENERAL, UNITED STATES POSTAL                         :
SERVICE                                               :
                                                      :
                                  Defendant.
----------------------------------------------------
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Plaintiff, Delois Ricks, initiated this lawsuit against John E. Potter, Postmaster

General ("Postal Service"), alleging employment discrimination (age and gender) in

violation of Title VII of the 1964 Civil Rights Act ("Title VII") and the Age Discrimination

in Employment Act ("ADEA").  (Docket #5).[1]

        On 9 December 2008, the Postal Service moved for summary judgment,

maintaining that Ms. Ricks was terminated during her 90-day probation period "for

failure to accomplish her tasks in a timely manner."  (Docket #33 at 2).  Ms. Ricks

---

        [1]The amended complaint also named United States Attorney General Alberto R.
Gonzales and U.S. Attorney Gregory A. White, alleged various state law claims, and sought
punitive damages.  Defendants moved for a dismissal of the state law claims and punitive
damages claim against all defendants and for a dismissal of all claims against the Attorney
General and U.S. Attorney. (Docket #12). Ms. Ricks opposed the motion. (Docket #15).  On 4
April 2008, this Court granted defendants' motion.  (Docket #17).  Only the Title VII and ADEA
claims pending against the Postal Service remain yet to be resolved.

opposed the motion on 4 February 2009 (Docket #36), and the Postal Service replied

on 13 February 2009. (Docket #37).  For the reasons discussed below, the Court will

grant defendant's motion for summary judgment.

**I.      BACKGROUND**

In 1993, Ms. Ricks, born 25 January 1950, began working for the Postal Service,

as a "temporary," in the capacity of "casual" clerk and "mail handler," in alternating 90-

day intervals.  (Docket #32, hereinafter "Ricks dep.," at 13:7-14:19; Docket #37 at 5).

Ms. Ricks worked in this capacity for approximately nine years (Ricks dep. 14:18-19)

until she passed a postal service test that qualified her to become a part-time flexible

city carrier ("PTF").[2]  (Ricks dep. 15:3-4; Docket #37 at 5).  Ms. Ricks started her

position as a PTF on 1 May 2004, at the B/C station between 55th and Superior in

Cleveland.  (Ricks dep. 17:14-18; 18:7-18).  Michael Howard was the manager of the

B/C station.  (Id. 18:19-24).   In her first week as a PTF, Ms. Ricks attended the "carriers

academy," where she was trained how to deliver mail and was tested on her knowledge.

(Id. 17:19-18:4).  During her second week as a PTF, Ms. Ricks received additional

training at the B/C station by working for four days with Betty Peacocks on her delivery

route and one day with Celeste Barker on her delivery route. (Id. 19:16-20:13).  Ms.

Ricks first carried mail by herself on 15 May 2004.  (Ricks dep. 20:14-19).

On 20 May 2004, Ms. Ricks and another probationary carrier (Mr. Tish) were

advised by Howard that they had to "step it up," referring to their delivery time, or he

was going to let them go.  (Id. 21:17-22-9; Reply at 4).   In early June, Ms. Ricks was

_____

[2]Neither party expressly defines or describes the duties of a PTF, other than to deliver,
but not sort, mail.

2

given a performance review during which she was given four "satisfactory" ratings and two "unsatisfactory ratings."  (Ricks dep. 35:11-22; Exhibit A thereto).  The unsatisfactory marks were in the area of work quantity and work quality.  Id.   On 15 June 2004, Ms. Ricks was terminated "[d]ue to poor job performance *** [and being] unable to complete assignments in a timely manner."  (Ricks dep. 36:10-22; Exhibit B thereto).

Ms. Ricks claims that she was terminated because she is an "older woman." (Ricks dep. 53:14-19; Affidavit of Steve Harrison at ¶14, attached as Exhibit C to Docket #36).  Ms. Ricks states that she had the hardest route at the B/C station, route 4008.[3] (Docket #36 at 6; Affidavit of Jay Valentine, attached as Exhibit B thereto; Harrison Aff. at 6; Ricks dep. 39:20-21; 43:10).  Ms. Ricks claims that Mr. Howard made changes to accommodate Mr. Tish and another carrier (John Stois) to help them better do their job but refused to make any adjustments for her, including allowing her to alternate between Route 4008 and other routes.  (Ricks dep. 53:19-54:10; Docket #36, Affidavit of Monica Smith, attached as Exhibit A thereto).  Ms. Ricks also claims that Mr. Howard told Mr. Valentine that, "he was not hiring an old ass woman to carry no mail."  (Ricks dep. 55:11-24).  Mr. Valentine states that Mr. Howard told him that Ms. Ricks was "too old to be carrying mail[,]" but does not mention gender.  (Valentine Aff. At 3).  Ms. Ricks also claims that Mr. Harrison told her that Mr. Howard did not like women (Ricks dep.

_____

[3]Ms. Ricks states that the route is the "hardest" because of its length, amount of hills, volume of mail, and recurring problems with the sorting and placement of delivery point sequence ("DPS") mail. (Ricks dep. 32-33; Harrison Aff. ¶6; Valentine Aff. 1-2).  The Postal Service describes DPS mail as machine-sorted mail that is received by each carrier in a pre-set sequence.  (Docket #37at 2).  The Postal Service acknowledges that the DPS system was "still relatively new" when Ms. Ricks began her probationary period.  Id.

48:20-23), but  Mr. Harrison's affidavit does not so indicate.  Ms. Ricks acknowledges

that she never heard Mr. Howard "say anything directly to" her that would cause her to

believe that her gender or age were factors in the decision to terminate her.  (Ricks

Dep. 59:22-60:14).   Ms. Ricks testified that she did not have any information that would

suggest that Mr. Howard had a "discriminatory attitude" towards older people and

acknowledged that there were older people working at the B/C station.  (Ricks dep.

60:19-25: 61:15-21).

## II.    SUMMARY JUDGMENT STANDARD

When "a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of

proof at trial[,]" summary judgment shall be entered in favor of a moving party.  Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the
> basis for its motion, and identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any,' which it believes demonstrate the absence of a
> genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving

party has the "burden of showing that the pleadings, depositions, answers to

interrogatories, admissions and affidavits in the record, construed favorably to the

nonmoving party, do not raise a genuine issue of material fact for trial", quoting

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), quoting Fed. R.

Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving

4

party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may

5

reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367,

1374 (6th Cir.1992) (citation omitted).

### III.    LAW AND ANALYSIS

"Age discrimination cases under ADEA are analyzed under the same framework

as employment discrimination cases under Title VII."  Grosjean v. First Energy Corp.,

349 F.3d 332, 335 (6th Cir. 2003).  "In order to prove a prima facie case for age

discrimination, a plaintiff must show[:] 1) that he is a member of a protected group, 2)

that he was subject to an adverse employment decision, 3) that he was qualified for the

position, and 4) that he was replaced by a person outside of the protected class." Kline

v. Tennessee Valley Authority, 128 F.3d 337, 349 (6th Cir. 2003), citing McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).  As to the fourth element, a plaintiff

can show instead that,  "a comparable non-protected person was treated better."

Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992).  "If the plaintiff establishes

[a] prima facie case, the burden then shifts to the defendant to 'articulate some

legitimate, nondiscriminatory reason for the employee's rejection.'"  Kline, 128 F.3d at

342, quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53

(1981).  If the defendant meets this burden, the plaintiff must demonstrate that the

employer's stated reason was pretext.  McDonnell Douglas, 411 U.S. at 804.

A plaintiff may establish a prima facie case of discrimination either through direct

evidence of intentional discrimination, or circumstantial evidence giving rise to an

inference of discrimination, the latter of which is analyzed under the foregoing

McDonnell Douglas paradigm.  Abdulnour v. Campbell Soup Supply Co., 502 F.3d 496,

501-502 (6th Cir. 2007), citing McDonnell Douglas, 411 U.S. 792.  Direct evidence and

6

the McDonnell Douglas formula comprise "two different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985); Kline, 128 F.3d at 348 (explaining that "the direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.")   In this case, Ms. Ricks argues that the Court should analyze her claim under the McDonnell Douglas formula, impliedly conceding that she does not have any direct evidence that she was subjected to discrimination.  Thus, the Court will consider whether Ms. Ricks has presented circumstantial evidence of discrimination.

As noted above, when a plaintiff alleges circumstantial evidence of discrimination, courts utilize a three-stage analysis. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 252-53.

A.      Prima Facie Case.

Ms. Ricks claims that the Postal Service discriminated against her because of her age and because she was a woman.

1.      Age Discrimination

The protected class in an age discrimination case includes all workers at least 40 years old.  Kline, 128 F.3d at 352-53; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-13 (1996).  The replacement or non-protected person must be a significantly younger person, not just a person outside the protected class. Id.

Ms. Ricks claims that the Postal Service discriminated against her because of her age and because she was a woman.  Ms. Ricks alleges that she was treated differently than two other workers: Richard Tish and John Stois. The Postal Service

7

does not pose any argument related to the first three <u>McDonnell Douglas</u> factors, but argues that Ms. Ricks has not established that a non-protected person was treated any differently than she was treated.  The Postal Service maintains that Mr. Tish is over 40 years of age and is less than one year younger than Ms. Ricks.  (Docket #33 at 11).  Mr. Stois was not identified as a "comparison employee" during the administrative phase of this dispute and is "not similarly situated to" Ms. Ricks because he was not a probationary employee.[4]  (Docket #37 at 3).  Ms. Ricks does not provide any evidence of either Mr. Stois's or Mr. Tish's ages.  As it is her burden to establish that a person under the age of 40, and significantly younger than Ms. Ricks, was treated better than she was treated, Ms. Ricks has failed to establish her prima facie case.  The Postal Service will be entitled to summary judgment on Ms. Ricks's ADEA claim.

> 2.      <u>Gender Discrimination.</u>

Ms. Ricks claims that she was treated differently than male mail carriers.  As discussed, infra, Ms. Ricks admits that she sometimes had a difficult time completing her routes on time because she was new, because her route was the hardest route at the station, and because the mail was sometimes mixed up.  Ms. Ricks maintains, however, that the Postal Service made accommodations for male employees who had

---

[4]The Postal Service's motion (Docket #33) attaches as Exhibits F and G, respectively, an EEOC decision, dated 23 September 2005, and a form entitled, "Notification of Personnel Action" for Mr. Tish.  Both documents provide support for the Postal Service's argument that Mr. Tish was born on 10 August 1950 (7 months later than Ms. Ricks).  Neither document has been properly authenticated under Fed.R.Civ.P. 56, as discussed in <u>Celotex</u>, <u>supra</u>.  However, Ms. Ricks did not object to this evidence, thereby waiving the issue.  <u>See</u> <u>Sigler v. American Honda Motor Co.</u>, 532 F.3d 469, 480 (6th Cir. 2008) (acknowledging waiver where no objection posed in any form, but finding proper objections in the case before it).  Moreover, our resolution of this claim does not depend on the facts established in Exhibits F or G as Ms. Ricks had the affirmative duty to establish the ages of Messrs. Tish and Stois.

similar difficulties, but refused to make such accommodations for her.  (Ricks dep. 53:19-54:10).  Ms. Ricks also argues that her supervisor did not like women and made a derogatory remark about her gender to another carrier.  (Id. 48:20-23;55:11-24).

The Postal Service does not make any argument related to this claim other than to state that Ms. Ricks "has no evidence that age *or* gender were factors in the decision to terminate her."  (Docket #33 at 12).  In the fact section of its brief, the Postal Service cites Ms. Ricks's deposition testimony that she never heard Mr. Howard make any statements that led her to believe that gender was a factor in the Postal Service's decision to terminate her.  (Docket #33 at 3; Ricks dep. 56:6-16).  Presumably, this is an attempt to argue that Ms. Ricks cannot establish her prima facie case because she cannot show the fourth McDonnell Douglas factor and the Postal Service is conceding the first three factors.

In support of her argument that she was treated differently than comparable male employees, Ms. Ricks provided the affidavits of Monica Smith (former mail carrier at the B/C station), Jay Valentine (mail carrier at the B/C station), and Steve Harrison (union steward at the B/C station) (Docket #36, Exhibits A, B, C).  The Court will consider the portions of each affidavit relevant to Ms. Rick's claim of gender discrimination.

a.      Ms. Smith's Affidavit.

Ms. Smith states that she was a regular full-time carrier at the B/C station at the time Ms. Ricks was working there.  Ms. Smith indicates that she witnessed John Stois having a difficult time completing his route in a timely manner during his probationary period and that Mr. Howard changed Mr. Stois's assignment.  Ms. Smith stated that Mr. Howard also instructed her to "case in" all DPS mail so that Mr. "Stois

would have an easier time with his delivery."  Mr. Howard also told her that he selected Mr. Stois's new route because it was "less volume than what was on Route 4008 because the streets were not as long."  Ms. Smith indicates that Mr. Howard "did not allow *** [Ms.] Ricks to benefit from the same opportunity as carrier Stois."  Ms. Smith finally states that Mr. Howard's discriminatory conduct towards Ricks "led to her termination."

> b.  Mr. Valentine's Affidavit.

As noted above, Mr. Valentine's affidavit supports Ms. Rick's characterization of Route 4008 as being the hardest route at the B/C station.  Mr. Valentine's affidavit also describes how Mr. Howard refused to allow him to "break down" Route 4008 to make it easier for Ms. Ricks.  Mr. Valentine also states that Mr. Howard told him that Ms. Ricks was too old to be carrying mail.  Mr. Valentine's affidavit does not, however, make any statements demonstrating that Ms. Ricks was treated differently than any male counterparts.

> c.  Mr. Harrison's Affidavit.

Mr. Harrison states that Mr. Tish struggled more than Ms. Ricks and that Mr. Howard assisted him by giving him easier routes and/or not punishing him as severely for returning late.  Mr. Harrison also states that Mr. Howard "allowed Mr. Tish to take 2 hours of the work day to simply collect mail out of the blue mail boxes, which was an easier job" and which, "opportunity was never provided to Ms. Ricks."  Mr. Harrison states that the difficulties that Ms. Ricks experienced during her first days of delivering mail "were not different than what every male encountered during his probationary period."  However, Mr. Harrison states, "Mr. Howard never treated the males in the

10

same way that he treated Ms. Ricks.  Other male carriers were given opportunities on other routes if they had difficulties.  Ms. Ricks was never given this opportunity."

The affidavits of Ms. Smith and Mr. Harrison provide at least a genuine issue of material fact as to whether Ms. Ricks was treated less favorably than male carriers Messrs. Tish or Stois.  The affidavits establish the following facts that the Postal Service has not contradicted:[5] (1) Mr. Tish was a probationary carrier suffering from similar performance problems as Ms. Ricks;[6] (2) Mr. Tish was given accommodations to help him perform that Ms. Ricks was not given; (3) Mr. Stois had problems completing his route in a timely manner; (4) accommodations were made for Mr. Stois to enable him to perform; (5) Mr. Stois was not a probationary carrier at the time Ms. Ricks was employed at the B/C station, but was a probationary carrier at the time the accommodations were made for him; and (6) similar accommodations to those made for Mr. Stois were not made for Ms. Ricks despite similar performance problems.

Ms. Ricks has established a genuine issue of material fact that male counterparts were treated better than she was treated.  Accordingly, Ms. Ricks has established a prima facie case for gender discrimination under Title VII.

---

[5]The Postal Service discounts the affidavits as being from "friends" who did not have personal knowledge of how Ms. Ricks performed.  Other than stating that both Mr. Tish and Mr. Stois successfully completed their probationary terms, the Postal Service does not address the allegations that they had similar performance problems and/or received specific accommodations that Ms. Ricks did not.  (Docket #37 at 2-4).

[6]The Court acknowledges that Ms. Ricks testified that the B/C station serviced two zip codes and that Mr. Tish was assigned to the other zip code. (Ricks dep. 45:9-46:7).  Ms. Ricks stated that she never worked a route in Mr. Tish's zip code and that each zip code had a different supervisor. (Ricks dep. 46:2-47:8).  However, neither party has provided evidence of any difference between each route or each supervisor.  Moreover, Mr. Tish and Ms. Ricks, both probationary employees, were together when they were given the same warning about their performance.

11

B.    Postal Service's Non-Discriminatory Explanation

Having established a prima facie case for gender discrimination, the burden now shifts to the Postal Service to rebut the presumption by offering a legitimate, nondiscriminatory reason for Ms. Ricks's discharge.  McDonnell Douglas, 411 U.S. at 802.  The Postal Service need not persuade the Court that it was "actually motivated by the proffered reasons" but the "explanation provided must be legally sufficient to justify a judgment for the defendant." Burdine, 450 U.S. at 254-55.  To meet its burden, an employer must clearly articulate, through admissible evidence, the nondiscriminatory reasons for its employment action. Id.

The Postal Service argues that Ms. Ricks was terminated for failure to "accomplish her tasks in a timely manner."  (Docket #33 at 2).  In support of its argument, the Postal Service notes that Ms. Ricks was required to deliver her route and be back at the station by 4:00 p.m. each day.  (Ricks dep. 40:8-9).   The Postal Service then points to Ms. Rick's admission that she was periodically late returning from her route, including on 14 June 2004, the day before she was fired.  (Docket #33 at 3, citing Ricks dep. 41, 48, 63, 64).  The Postal Service attached Exhibits A, C, and D, to its motion, each of which Ms. Ricks identified during deposition, to further support the conduct that led to Ms. Ricks's termination.

Exhibit A is entitled, "Employee Evaluation and/or Probationary Report," and indicates that Ms. Ricks was given an unsatisfactory rating for work quantity and quality. Exhibit C is entitled, "EEOC Investigative Affidavit" and is dated 27 October 2004.  Ms. Ricks handwrote and signed the affidavit and states that it is an accurate summary of the events that led to her termination.  (Ricks dep. 37:12-38:2).  In the affidavit, Ms.

12

Ricks admits to being late on several occasions and admits to being warned to "speed up."  Exhibit D is entitled "Information for Pre-Complaint Counseling," and is dated 17 June 2004.  Ms. Ricks handwrote and signed the document and admits that it is an accurate summary of events. (Ricks dep. 38:8-39:5).  On the form, Ms. Ricks describes the warning she was given on 25 May 2004, to "speed it up" or she would be let go.  Ms. Ricks also lists each day she was employed at the B/C station and indicates that she returned to the station after 4:00 p.m. seven times, out of the 15 times she carried the mail while employed as a PTF. (Ricks dep. 20:14-19). The agreement between the Postal Service and the National Association of Letter Carriers, AFL-CIO, allows the Postal Service to terminate an employee during the probationary period.  (Docket #33 at 4, Exhibit E thereto.)[7]

The foregoing demonstrates a non-discriminatory explanation for Ms. Ricks's termination during her probationary period.  By Ms. Ricks's own admission, she was late returning to the station almost half of the days she carried mail.   Moreover, Ms. Ricks was warned about her speed on several occasions and told that she would be terminated if her speed did not improve.  Finally, Ms. Ricks was late on the day before she was terminated.

C.    Pretext

As the Postal Service has provided a non-discriminatory explanation for Ms. Ricks's termination, Ms. Ricks must respond by demonstrating, by a preponderance of the evidence, that the Postal Service's proffered reason for the discharge is a pretext for

---

[7]The Postal Service did not properly authenticate Exhibit E, but Ms. Ricks failed to object, thereby waiving her right to challenge the Court's consideration of Exhibit E.  See footnote 4, *supra.*

13

discrimination. See McDonnell Douglas, 411 U.S. at 802-4.  Ms. Ricks bears the

burden of demonstrating that the Postal Service's explanation is pretextual.  Dews v.

A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).  Ms. Ricks can show that the Postal

Service's decision was pretextual by presenting sufficient evidence that the proffered

reason either: (1) had no basis in fact, (2) did not actually motivate the decision, or (3)

were insufficient to motivate the decision.  Manzer v. Diamond Shamrock Chemicals

Co., 29 F.3d 1078, 1084[8]; Kline, 128 F.3d at 346.  In other words, the plaintiff "must

produce sufficient evidence from which the jury may reasonably reject the employer's

explanation."  Manzer, 29 F.3d at 1083.

   Ms. Ricks does not specifically argue that the reason the Postal Service provided

for her termination was pretext or provide any direct evidence of pretext.   As Ms. Ricks

admits that she did not timely complete her route almost half of the days she worked,

she cannot establish that the Postal Service's explanation has no basis in fact and

cannot establish the first Manzer factor.  Moreover, Ms. Ricks does not argue that being

untimely is not a proper basis for termination.  Instead she argues that she was not

given enough time to improve, given the difficulty of her route, before she was

terminated.  Thus, Ms. Ricks has not established the third Manzer factor.  As to the

second Manzer factor, Ms. Ricks has claimed, albeit not in context of a pretext

argument, that her gender provoked her dismissal, not her untimely performance.  As

noted above, Ms. Ricks does not argue that any specific evidence demonstrates

---

[8]The claim in Manzer was brought under the Tennessee Human Rights Act, but was analyzed under using the McDonnell Douglas approach because the analysis is substantially similar to claims brought under the ADEA, and, therefore, Title VII. See id.

14

pretext.  Thus, the Court must determine whether the Postal Service's reason for termination was pretextual based on the evidence Ms. Ricks provided to establish her prima facie case.

Even when evidence is sufficient to establish a prima facie case, it is not sufficient to establish pretext unless the evidence is connected to the adverse employment action.  Clack v. Rock-Tenn Co., 2008 WL 5378026, at *3 (6th Cir. 2008). See, also, Cecil v. Louisville Water Co., 302 Fed.Appx. 490, 498 (6th Cir. 2008) (holding that a few inappropriate comments are too thin a basis on which to invalidate employer's nondiscriminatory reasons); Rowarn v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 549 (6th Cir. 2004) (holding that "average-age statements" related to a concern for upcoming workforce retirements do not demonstrate that a decision to terminate specific plaintiffs was connected to their age thereby negating the employer's legitimate non-discriminatory reason); Cicero v. Borg-Warner Automotive, Inc., 280 F.3d 579, 589 (6th Cir. 2002)(citing Manzer, 29 F.3d at 1084, and holding that there must be evidence that the reasons offered by the defendant did not actually motivate the discharge; a plaintiff cannot simply rely on her prima facie evidence to demonstrate pretext).

While sufficient to establish a prima facie case for discrimination, Ms. Ricks's evidence does not, save a single opinion statement in Ms. Smith's affidavit, connect gender with the decision to terminate Ms. Ricks.  Ms. Smith's statement that the "unfairness of Michael Howard *** led to [Ms. Ricks's] termination" is simply Ms. Smith's opinion.  Moreover, it does not provide any evidence that Mr. Howard considered Ms. Smith's gender when he made the decision to terminate her.  Ms. Ricks acknowledged

15

that, other than the derogatory comment that Mr. Howard allegedly made to Mr. Valentine, and Mr. Harrison telling her that Mr. Howard did not like women,[9] she knows of no other facts that suggest that Mr. Howard had a discriminatory mindset or that her gender was a factor in his decision to terminate her. (Ricks dep. 56:6-16; 58:16-60:14).

Ms. Ricks has not presented any evidence that her gender motivated the Postal Service to terminate her.  Ms. Ricks has not established any of the three factors necessary to demonstrate that the reason the Postal Service proffered for her termination was pretext.  The Postal Service is entitled to summary judgment on Ms. Ricks's Title VII claim for gender discrimination.

**IV.     CONCLUSION**

For the reasons set forth above, this Court grants defendant's motion for summary judgment with respect to all of plaintiff's claims against it and plaintiff's complaint is dismissed.

IT IS SO ORDERED.

  /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: 27 March 2009

---

[9]As noted, supra, neither Mr. Valentine's nor Mr. Harrison's affidavits establish that Mr. Howard made a derogatory statement about Ms. Ricks's gender or that Mr. Howard did not like women.

16